ALPHA PETROLEUM COMPANY V. C. V. TERRELL, CHAIRMAN
RAILROAD COMMISSION OF TEXAS, ET AL.

No. 6363.  Decided February 13, 1933.
(59 S. W., 2d Series, 364.)
Per Curiam Opinion by Supreme Court (Motion No. 10608).
Decided February 17, 1933.
(59 S. W., 2d Series, 372.)
Rehearing Overruled April 5, 1933.
Second Motion for Rehearing Overruled June 24, 1933.

*V. Childress* and *Wm. N. Bonner*, both of Wichita Falls, and *John T. Garrison, Paul D. Page, Jr., Lawrence Lipper, William F. Grimes, Leon Sonfield,* and *Sewell, Taylor, Morris & Garwood*, all of Houston, for plaintiff in error.

Notwithstanding the imperative provisions of a procedural statute, fixing or changing the venue of actions affecting pre-existing rights, such legislation is neither mandatory nor jurisdictional but concerns only venue, giving to the party sued only

the privilege of having the litigation conducted in the prescribed forum; therefore the procedural provision of Section 10, H. B. 25, relating to the filing of suits by and against the Railroad Commission are not jurisdictional but concern venue only. Sec. 8, Art. 5, Constitution; Arts. 1914, 4643, 4663, Rev. Civ. St., 1925; City of Dallas v. Wright, 120 Texas, 190, 36 S. W. (2d) 973; Townes, Texas Pleading (2d ed.), 297-298.

Section 10 of H. B. 25 is a venue statute only: Art. 1995, Subd. 4, 29a; Campbell v. Trimble, 75 Texas, 270, 12 S. W., 863; De la Vega v. League, 64 Texas, 205; Morris v. Runnells, 12 Texas, 175; Ryan v. Jackson, 11 Texas, 391; Willis v. White (Texas Civ. App.), 29 S. W., 818; Lyon v. Waggoner, 37 Texas Civ. App., 205, 83 S. W., 46, w. e. ref.; Boyd v. Genitempo (Texas Civ. App.), 260 S. W., 934; Sterrett v. Gibson (Texas Civ. App.), 168 S. W., 16; Board of Water Engineers v. Briscoe (Texas Civ. App.), 35 S. W. (2d) 804; Townes, Texas Pleading (2d ed.), 297-298, 327; 40 Cyc., 41-54.

Neither Section 10 of H. B. 25 nor any other section thereof, nor any provision of the Constitution, statutes or decisions of Texas now in force or of which a record has been preserved, has ever purported to deny or abridge the inherent right and the constitutional and statutory duty of a judge of a District Court to act without notice and temporarily restrain a defendant from doing an act from which it clearly appears that irreparable injury would result to the petitioner, and the District Judge of Montgomery County was fully authorized to issue the temporary restraining order in this case. Ex parte Rains, 113 Texas, 428, 257 S. W., 217 (Cureton, C. J.); Ex parte Zuccaro, 106 Texas, 197, 163 S. W., 579; Wood v. Bird (Texas Civ. App.), 20 S. W. (2d) 221; City of Beaumont v. Sam's Loan Office (Texas Civ. App.), 4 S. W. (2d) 586; Johnson v. Sunset Stores (Texas Civ. App.), 27 S. W. (2d) 644; Houghton v. Meyer, 208 U. S., 149, 52 L. Ed., 432; Lewis & Spelling, Injunctions, Sec. 19, p. 31; 32 C. J., 34; Ann. Cas., 1917B, 121; 14 R. C. L., 306.

*James V. Allred,* Attorney General, *Maurice Cheek,* Assistant Attorney General, and *John C. Jackson,* of Houston, for defendants in error.

First: That the proceedings instituted by appellee constitute an attempt to annul, correct or modify a rule or order promulgated by the Railroad Commission under Chapter 26, Acts Forty-second Legislature, First Called Session, which, by Section 8 of said Act can only be filed in a court of competent jurisdiction in Travis County, Texas, and not elsewhere; that

the District Court of Montgomery County has no jurisdiction to entertain such a suit, and all proceedings in said court are totally void and the proceedings instituted by appellee should be dismissed so far as these appellants are concerned.

Second: That Section 10 of the Act above referred to provides that no injunction shall be granted against the Railroad Commission to restrain it from enforcing any of its rules, regulations or orders relating to oil or gas, except after notice to the Commission and a hearing. Since it affirmatively appears that no notice was given to the Commission, and no opportunity for hearing on the application for temporary injunction granted to appellee, said order is in direct conflict with the provisions of the Act referred to, and is void. Texas Steel Co. v. Ft. Worth & D. C. Ry. Co. (Supreme Court on certified questions), 120 Texas, 597, 40 S. W. (2d) 78; same case in Court of Civil Appeals, 45 S. W. (2d) 794; West Texas Compress Co. v. Panhandle & S. F. Ry. Co., 15 S. W. (2d) 558; Champlin Ref. Co. v. Corporation Com. of Okla., 26 U. S., 210.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the district court of Montgomery County, Texas, by Alpha Petroleum Company, a Texas Corporation, against the Texas Railroad Commission and certain other parties, to restrain the enforcement against it of the following two oil and gas rules of the Railroad Commission:

"Therefore, it is ordered by the Railroad Commission of Texas, that, effective at seven o'clock A. M., September 24, 1932, and until further ordered by the Commission, the following regulation shall be observed the Gulf Coast District, to-wit:

"No well shall after the effective date of this order, produce in excess of Two Hundred and Forty (240) barrels of crude oil daily; provided that the Commission, in order to prevent consequential injury to any well or wells or to any oil producing formation in said district, may grant exceptions to this regulation upon application and a proper showing of facts supporting such application. In immediate recognition of the claim of operators in said district that wells on piercement type dome structures can not in every case be safely restricted below the flow at which they have been set after experimentation in rates of flow, and to test that claim, all wells completed on such structures are hereby granted temporary exceptions to this regulation until the agents of the Commission may observe the effect of cutting down the flow of said wells; and all owners and operators of said wells which produce in excess of Two

Hundred and Forty (240) barrels of crude oil daily, as to the date hereof, shall be quickly as practicable to do so, under observation of the Commission's agents, and in no event in less than within thirty days from the effective date of this order, unless otherwise permitted by the Commission, make actual effort in good faith to reduce the flow of such wells to accord with the maximum production per well per day fixed herein, and, in any event, the flow of such wells shall be restricted to as nearly to Two Hundred and Forty (240) barrels of crude oil daily, as may be done without injury to said wells or to the oil producing formations in which they are completed."

The above is known as Rule 24.*

"Rule 1. Rule 37 adopted November 26, 1919, is hereby amended insofar as it applies to the Conroe or Strake Field in Montgomery County or extensions thereof, so as to hereafter read as follows:

"No well shall hereafter be drilled for oil or gas at any point less than 933 feet from any drilling or completed well, and no well shall hereafter be drilled for oil or gas at any point less than 466 feet from any property line or division line. In order to prevent the impairment of vested rights in the carrying out of this rule and to protect the owners of small tracts in the enjoyment of such rights, the Commission shall require the several owners of adjacent small tracts of less than 20 acres and the owners of larger tracts adjacent to such small tracts to combine or pool their acreage in such way as to constitute units of 20 acres or approximately 20 acres, and upon such equitable and reasonable terms as the Commission may prescribe after notice to the owners of such adjacent tracts and after hearing. It is the purpose of this rule to limit the drilling of wells to one well to 20 acres or approximately 20 acres of surface ownership. This rule shall apply to the spacing of all wells not already actually spudded in on June 25, 1932. In order further to protect vested rights as against wells actually spudded in, drilling or completed on such date, and to conform to the irregularities in the shape of separately owned or combined tracts of 20 acres or approximately 20 acres, the Commission will, after hearing, grant exceptions permitting drilling within a less or shorter distance than hereinabove prescribed upon application duly filed fully stating the facts, notice of such application and hearing having been given to the owners of all adjacent leases affected thereby; provided that if the owners of all adjacent leases affected thereby waive in writing notice of hearing

*See per curiam opinion, *post* 274.—[Ed.]

on or objection to the granting of such application, the Commission may proceed to determine such application without hearing. The mere filing of an application to drill prior to the effective date of this rule or of this order shall not entitle the party filing the same to a permit in exception to this rule or any special privileges to violate the same. Wells already spudded in prior to July 1, 1932, on 330 and 660 foot spacing under authority of the temporary rule as adopted by order of June 14, 1932, will be considered regular locations, and offsets thereto will be granted similar spacing."

The petition prays for the issuance of temporary restraining orders or temporary injunctions, prohibitory or mandatory, and in either case to be made permanent on final hearing, to the end that plaintiff may be permitted to produce and transport its oil as heretofore without injury to its wells and to the end that it may be permitted to drill at least one additional well on one of its leases, and that defendants and all of them be prohibited from instituting any suit against the plaintiff for penalties, or for other relief of any character, other than to answer this suit, etc.

On September 23, 1932, the plaintiff's petition was presented to the Honorable S. A. McCall, judge of said district court, who, in chambers, and without notice or hearing, indorsed thereon the following order:

"In Chambers

"At Conroe, Texas.

"This, the 23rd day of September, 1932, the foregoing petition coming on to be considered by the undersigned Judge, in Chambers, the same has been examined and considered, and I assume jurisdiction of this case and order it filed.

"It is ordered, adjudged and decreed that a temporary restraining order issued against the Defendants, and each of them, as prayed for by the Plaintiff, to continue until the further orders of this court that may be signed and entered herein. The parties are advised of the desire and purposes of the court to hear, at the convenience of the parties, any motion of any Defendant that may be filed and desired heard herein, and of the further desire and purpose of the court to hear such motion within ten (10) days of the date hereof, the Clerk will issue notice to the defendants forthwith; provided, however, that the Plaintiff shall first file a good and sufficient bond, to be approved by the Clerk, in the sum of one thousand dollars ($1,000.00), payable to the undersigned Judge of this court, for the use and benefit and protection of the Defendants named

herein, and each of them, and otherwise conditioned as provided by law.

"S. A. McCall
"Judge of the 9th Judicial District of Texas."

Bond was given as provided by the above order, and writ of injunction issued. The writ enjoined the Railroad Commission from enforcing only the rule first above quoted, known as rule 24, "until the further order of said court."

We here copy the following from the opinion of the Court of Civil Appeals:

"Thereafter appellee, on October 1, 1932, presented to the Hon. S. A. McCall, judge of the Ninth judicial district, Montgomery county, Tex., a motion wherein it is recited that the Attorney General of the state of Texas had ordered a transcript of the proceedings in this cause from the district clerk of Montgomery county with the intention of perfecting an appeal from the order of September 23, 1932, and, while denying the right of appeal, stated that he did not want any previous orders to lapse, and requested that, pending appeal, the former order be continued in full force and effect for a period of ten days, or until and if a valid appeal should be perfected to the Court of Civil Appeals at Beaumont, Tex. The district judge endorsed on said motion the following order:

" 'Fiat.
" 'In Chambers, Conroe, Texas.
" 'October 1, 1932.

" 'The above and foregoing motion having been presented to me on this the 1st day of October, 1932, and being of the opinion that said motion shows good cause for the extension of my order heretofore entered herein, on September 23rd, 1932, it is accordingly ordered that said temporary restraining order issued by me on September 23rd, 1932, be and the same is hereby in all respects extended for a period of ten days, and subject to the further orders of this court made and entered herein.

" 'The Clerk of the Court will issue appropriate notices.

" 'S. A. McCall, Judge of the 9th Judicial
District, Montgomery County, Texas.'

"The original transcript, which did not contain the last order mentioned, was filed in this court on October 4, 1932, although the transcript was certified by the clerk of the Montgomery county district court on the 27th day of September, 1932, and delivered to an Assistant Attorney General. A supplemental transcript has been filed which contains the last-

mentioned order. This appeal is before us on appellee's petition and the two orders, as no evidence was heard by the judge of the court below."

On final hearing in the Court of Civil Appeals (54 S. W. (2d) 821), the court held that the district court's order here appealed from amounted in law to a temporary injunction, and was therefore appealable, and reversed and dissolved the same. Plaintiff brings error.

Viewing this record as a whole, and especially in the light of the writ issued on the court's order, we hold that this appeal only involves the relief sought by the plaintiff as concerns rule 24 above quoted. Therefore what we shall say and the rulings we shall make are confined to such rule.

■ We agree with the holding of the Court of Civil Appeals to the effect that the order appealed from amounts, in law, to a temporary injunction, and was and is, therefore, appealable. We shall therefore not concern ourselves further with that matter.

■ We are of the opinion that the Court of Civil Appeals was correct in reversing the judgment of the district court and dissolving the injunction here appealed from, for two reasons: (A) Because such order was issued without notice; and (B) because the district court of Montgomery county was without jurisdiction to enter it.

Addressing ourselves to the reason first above given for holding this injunction void, we call attention to the fact that the record shows affirmatively and conclusively that the temporary injunction here appealed from was issued against the Railroad Commission without notice or hearing, in direct contravention of the provisions of section 10, chapter 26, Acts First Called Session, Forty-Second Legislature, approved and effective August 12, 1931. This section provides as follows: "No injunction shall be granted against the Railroad Commission to restrain it from enforcing rules, regulations and orders made and promulgated by the Commission under the terms of this Act or of any conservation statutes of this State relating to oil or gas except after notice to the Commission and a hearing. * * *"

■ The case at bar is a direct appeal from an injunction granted by the district court of Montgomery county in absolute disobedience of the above mandatory statute. In this connection we wish to say that, as we understand the plaintiff's petition, it does not allege any ground that would render rule 24 void

on its face. Such being the case, we hold the provisions of the above statute are mandatory, and any temporary injunction granted in violation of its terms is void.

■ We now come to discuss our holding that the district court of Montgomery county had no jurisdiction to issue the temporary injunction here appealed from. This holding includes the further holding that such jurisdiction would be lacking, even had a notice and hearing been had. In this connection we deem it expedient to here quote section 8, chapter 26, Acts First Called Session, 42d Legislature, supra. The section mentioned reads as follows: "Any interested party affected by any rule or order made or promulgated by the Commission, under the terms of this Act and who may be dissatisfied therewith, shall have the right to file a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, as defendant, and ask for such relief as may be necessary to annul, correct or modify such rule or order so promulgated by the Commission. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all trials under this section, the burden of proof shall be upon the party complaining of such rule, regulation or order and such rule, regulation or order so complained of shall be deemed prima facie valid until otherwise shown."

Under the plain terms of the above-quoted statute we are compelled to hold that any suit which seeks to annul, modify, or set aside any rule of the Commission valid on its face, promulgated by authority of the terms of chapter 26, supra, must be brought in a District Court of Travis County, Texas, and that this requirement is one of jurisdiction, and not a mere question of venue. We further hold that, if the rule is one utterly void on its face, it may be attacked in any court otherwise having jurisdiction of the case. We finally hold, however, that, if it requires evidence to show the invalidity of the rule, it is not void on its face, and is not subject to collateral attack or to attack in any court, except a District Court of Travis County.

■ In announcing the above rule, we wish to expressly state that we do not hold that it lies within the power of the Legislature to, by statute, take away the constitutional jurisdiction of district courts. What we hold is that, where the suit is to enforce a right which exists only by operation of the statute, and not under the Constitution or the common law, it does lie

within the power of the Legislature to designate a particular court as an exclusive tribunal to hear and determine such suit. In such a case where the statute, as this one does, provides that the suit shall be filed in a particular court, it demonstrates a conclusive legislative intent to designate such court as the only tribunal where such matter can be litigated, and, as said by our Supreme Court, speaking through Judge Cureton, in Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084, 1088: "In special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional."

If the district court of Montgomery County has jurisdiction of a proceeding to set aside an order of the Railroad Commission, it must be conferred either by the Constitution, the common law, or by statute. It is clear that said district court is not vested with such jurisdiction by any provision of the Constitution, nor does it exist by reason of the adoption of the common law. It has not been conferred by the Legislature, as the statute enacted by that body limits jurisdiction in such cases to the District Court of Travis County "and not elsewhere." The courts are without authority to extend a statute vesting jurisdiction in a particular district court to all district courts of the State. To do so would be a clear invasion of the legislative prerogative.

■ In the case at bar Commission rule No. 24, supra, is not attacked on any ground that would render it void on its face; on the contrary, every attack made thereon requires the trial court to go behind the face of the rule and hear testimony in order to ascertain if the plaintiff's grounds of attack are true. Where such an attack is made, in a case in which the rule must be set aside or annulled before the relief sought can be granted, no common law or constitutional jurisdiction is involved, but merely jurisdiction, which is created by the statute. On the other hand, if the rule is void on its face, it does not have to be set aside at all because a void rule is no rule at all, and therefore no bar to any character of relief.

We cite the following authorities in support of the rulings we have made with reference to jurisdiction: Section 8, chap. 26, supra; Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084, 1087; Railroad Commission v. Weld et al., 95 Texas, 278, 66 S. W., 1095, 1097; Railroad Commission v. H. & T. C. Ry. Co., 90 Texas, 340, 38 S. W., 750; West Texas Compress Co. v. Panhandle & S. F. Ry. Co. (Texas Com. App.), 15 S. W. (2d) 558, 561; Texas Steel Co. v. Fort Worth & D. C. Ry. Co., 120 Texas,

597, 40 S. W. (2d) 78, 82 (Com. App. opinion adopted); Texas Steel Co. v. Ft. W. & D. C. Ry. Co. (Texas Civ. App), 45 S. W. (2d) 794; 1 C. J., p. 988, par. 100; Galpin v. Page, 18 Wall. (85 U. S.), 350, 372, 21 L. Ed., 964; Morse v. Presby, 25 N. H., 302; Cunningham v. Robison, 104 Texas, 227, 136 S. W., 441, 442; Ex parte Towles, 48 Texas, 444, 7 R. C. L., p. 1032; Carlisle v. Missouri Pac. Ry. Co., 168 Mo., 652, 68 S. W., 898.

In Mingus v. Wadley, supra, our Supreme Court, speaking through Judge Cureton, construed several sections of the Workmen's Compensation Law and expressly holds that suits arising thereunder are in derogation of the common law, and that the rights to be enforced and remedies provided are purely statutory. The opinion then proceeds to construe section 5 of article 8307, which provides that all suits to set aside the final award of the Accident Board shall be brought in the county where the injury occurred, and holds that such provision is jurisdictional and mandatory. We quote the following from the opinion:

"As to the county where suit to set aside an award may be brought, the statute is clearly mandatory. Revised Statutes, art. 8307, par. 5, provides that the suit to set aside the final award of the board 'shall' be brought 'in the county where the injury occurred.' The language used is mandatory, and its purpose evident. Such a suit of necessity involves the fact of the accident, the issue of the injury, and the wages of the claimant; all of which may be established with less expense, trouble, and delay in the county where the injury occurred than in any other county.

"Having in mind the general rule that workmen's compensation acts are to be liberally construed to effectuate their beneficial purpose, there can be no doubt that, when the Legislature specified the county in which a suit to vacate an award should be filed as the county where the accident occurred, the specification was exclusive and intended to be jurisdictional. In fact, the statute itself declares that the rights of the parties are to be determined 'by the provisions of this law.' Besides, in special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional. Cunningham v. Robison, 104 Texas, 227, 136 S. W., 441; United States Fidelity & G. Co. v. Lowry (Texas Civ. App.), 219 S. W., 222, 224 (dissenting opinion); Calverley v. Shank, 28 Texas Civ. App., 473, 67 S. W., 435; 1 Corpus Juris, p. 988, pars. 100, 102; Carlisle v. Mo. Pac. R. Co., 168 Mo., 652, 68 S. W., 898."

In Railroad Commission v. Weld, supra, our Supreme Court had before it a case involving then articles 4564, 4565, and 4566, R. C. S., 1895 (present articles 6452, 6453, and 6454). Then article 4564 provided, among other things, that the rates, charges, orders, rules, etc., of the Commission should be held conclusive and accepted as reasonable and fair until finally found otherwise in a direct action brought for that purpose in the manner prescribed by then articles 4565 and 4566. Article 4565 provided that the action should be brought in the District Court of Travis County, Texas. Article 4566 defined the burden of proof, etc. In discussing these statutes, Judge Brown, speaking for the court, used the following language:

"These articles provide an expeditious method for determining the reasonableness and justice of any rate, order, rule or regulation which the Commission might make, and at the same time permit the enforcement of the rates, etc., until the judgment of a court declaring them to be unjust and unreasonable has been rendered.

"This action was brought under articles 4565 and 4566, above quoted, and the court was therefore confined to the provisions of those articles in entering its judgment and granting relief. The only issue which was presented in this suit was, are the rates, rules, and orders put in question by the pleading, as applied to the character of shipments alleged in the pleadings, unjust and unreasonable? The jurisdiction of the court is limited to the determination of that issue."

We think the above holding clearly indicates that the court intended to say that the action provided by the statutes discussed was a special one created by such statutes.

In Railroad Commission v. H. & T. C. Ry. Co., supra, our Supreme Court had before it a suit brought by the Railroad Company against the Commission under the statutes discussed in the Weld Case, supra, to annul an order of the Commission relative to the compression of cotton, etc. The railroad did not contend that the rule sought to be set aside amounted to the taking of property without just compensation or without due process of law. The Attorney General, on behalf of the Commission, took the position that the action authorized by the statutes under which the suit was brought only contemplated that the rules of the Commission could be set aside by the courts when such rules amounted to the taking of property without proper compensation or without due process of law. Judge Brown exhaustively discusses this contention, and demonstrates that the purpose and intent of the statutes mentioned were to

confer on the court a statutory power or jurisdiction to review the orders, rules, etc., of the Commission that did not exist under the Constitution, and did not exist absent the statute.

In West Texas Compress Co. v. Panhandle & S. F. Ry. Co., supra, the writer for Section A of the Commission of Appeals construed the same statutes under consideration in the Weld and H. & T. C. Ry. Co. Cases, supra, and held:

"By the imperative terms of the above-quoted statute, which has many times been held to be valid and constitutional by the Supreme Court of this State, the rules, regulations, rates, etc., of the Railroad Commission are deemed to be reasonable, fair, and just, unless, and until, set aside in a direct proceeding brought for that purpose as prescribed by articles 6452, 6453, and 6454, R. C. S. 1925. The rule quoted is certainly not void as the Commission has power and authority to make such rules. If, for any reason, it is unfair or unjust, which question we do not pass on, such matters will have to be called in question and litigated in the manner and in the court prescribed by law; that is, in a District Court of Travis County, with the Railroad Commission made party to the suit. Railroad Commission v. Weld, 95 Texas, 278, 66 S. W., 1095; Missouri, K. & T. Ry. Co. of Texas et al. v. Railroad Commission (Tex. Civ. App.), 3 S. W. (2d) 489.

"By the plain and unambiguous language of article 6453, R. C. S. 1925, it is provided that, if any railroad company or other party at interest is dissatisfied with any rate, classification, rule, etc., adopted by the Railroad Commission, such dissatisfied party may file his petition, etc., in a court of competent jurisdiction in Travis County, against the Commission as defendant. This statute is exclusive in its very nature. A construction that it is not exclusive would violate all known rules of statutory construction, and lead to chaotic conditions with reference to the proceedings, rules, etc., of the Commission. Certainly in the face of such provisions as are contained in articles 6452 and 6453, supra, collateral attacks on orders, rules, etc., of the Commission cannot be tolerated."

In Texas Steel Co. v. Fort Worth & D. C. R. Co., supra, Section A of the Commission, speaking through the writer, again construed the statutes above discussed, and held that a suit brought to annul an order of the Commission valid on its face must be brought in Travis County with the Commission made a party. We quote the following from that opinion:

"We take it that the statutes above quoted mean what they say. It is not contended that the orders of the Railroad Com-

mission here collaterally attacked are void on their faces, or that the Railroad Commission was without inherent lawful jurisdiction to act in the premises. If such contentions were made, they would be without merit.

"The various statutes above mentioned have been in force for many years, and time and experience have demonstrated their wisdom. The statutes providing against collateral attacks on the judgments and orders of the Commission were necessary in order that the Commission might properly function. The rules and rates of the Commission are matters of general public interest, as well as interest to shippers and carriers. If an order of the Commission, lawful on its face, can be collaterally attacked in the various courts and counties of the state on grounds such as those urged in the instant case, interminable confusion would result, and railroad companies, though honestly endeavoring to obey the law and the orders of the Commission could be mulcted in large sums in damages and penalties, and the orders and rates of the Commission rendered hazardous to obey.

"We think that a casual reading of the certificate will demonstrate that the orders of the Commission here attacked as null and void are regular on their faces. All the grounds urged to nullify such orders require the court to go behind them to ascertain the facts, and do not appear on the face of such orders. It has long been settled in this State that such an attack is collateral.

"If an order of the Commission regular on its face can be collaterally attacked on the ground of want of notice, or any other grounds here urged, then the orders and rates of the Commission could be rendered null and void in a proceeding in which the Commission was never given an opportunity to be heard either on the facts or the law. Furthermore, different courts might reach conflicting conclusions as to the facts involved in the same order. This demonstrates the wisdom of the statute and the correctness of the rule here announced. The Legislature recognized in the beginning that to allow such attacks would lead to intolerable results, and foreclosed the right to do so by the statute prescribing the manner and the court in which the rules and rates of the Commission can be subjected to judicial review. At this point we wish to state that we do not want to be understood as holding that we would hold these orders illegal in a direct proceeding. We do not pass on that matter, as we have no such proceeding here. What we do hold is that the orders here attacked are not subject to be called in

question except in a direct proceeding brought in full conformity with the provisions of article 6453, supra."

The above opinion was adopted as the opinion of the Supreme Court.

In Texas Steel Co. v. Fort Worth & Denver C. Ry. Co., 45 S. W. (2d) 794, 796, supra, the Court of Civil Appeals at Fort Worth, in an opinion by Judge Buck, again construed the Railroad Commission statutes, and held: "These orders of the Railroad Commission attacked by appellant are within the jurisdiction of the Railroad Commission of Texas, under article 6448, Rev. Civ. Statutes. Therefore by article 6452 they are binding upon both the appellant and appellees in this case. Appellant in this suit is attempting to set aside the judgments and orders of the Railroad Commission of Texas by a collateral attack. This cannot be done except by a direct attack in the Travis County District Court, unless such orders were wholly void. West Texas Compress Co. v. P. & S. F. Ry. Co. (Tex. Com. App.), 15 S. W. (2d) 558; Producers' Refining Co. v. M., K. & T. R. R. Co., 13 S. W. (2d) 679, by the Commission of Appeals, approved by the Supreme Court. The trial court of Tarrant County has no jurisdiction, either by direct or collateral attack, to set aside the orders of the Railroad Commission of Texas unless such orders are wholly void, and we do not think such orders were wholly void."

In 1 C. J., p. 988, supra, the rule is thus stated: "It is competent for the Legislature to provide a remedy in cases where none existed at common law, or in creating a new right to prescribe the remedy by which it is to be enforced, and limit jurisdiction of it to a particular tribunal, or to provide new remedies for pre-existing rights, and make such new remedies exclusive. Where a statutory remedy is prescribed for a particular purpose, it will be limited accordingly and cannot be used for other purposes, and in pursuing a statutory remedy the proceedings must conform to the provisions of the statute."

In Galpin v. Page, supra, the United States Supreme Court announces the rule as follows: "The extent of the special jurisdiction and the conditions of its exercise over subjects or persons necessarily depend upon the terms in which the jurisdiction is granted and not upon the rank of the court upon which it is conferred. Such jurisdiction is not, therefore, the less to be strictly pursued because the same court may possess over other subjects or other persons a more extended jurisdiction."

In Morse v. Presby, supra, the Supreme Court of New Hampshire thus states the rule: "A court of general jurisdic-

tion, however, may have special and summary powers, wholly derived from statutes, not exercised according to the course of the common law, and which do not belong to it as a court of general jurisdiction. In such case, its decisions must be regarded and treated like those of courts of limited and special jurisdiction."

In Cunningham v. Robison, supra, our Supreme Court had before it the construction of then article 3499, R. S., 1895, relating to the removal of the disabilities of minors over the age of 19 years. The statute then provided, as it does now, that the application should be made to the district court of the county where the minor resided. The statute limiting jurisdiction to the district court of the minor's residence was held to be mandatory and jurisdictional. We quote the following from the opinion: "The statute of this State herein copied above confers special jurisdiction upon the district court to remove the disabilities of minors 'over the age of nineteen,' and the jurisdiction is conferred upon the district court of the county in which 'he may reside.' It is apparent from this language that the two facts—that the minor is over 19 years of age and that he resides in the county in which the proceeding is had—are jurisdictional in their character, and must be made to appear in the record in order to sustain the action of the court in exercising that power. A district court has no authority to remove the disabilities of a minor under 19 years of age. Therefore it must appear that such minor is over 19 years of age at the time. Such court has no jurisdiction except over such minors as may reside within the county in which the court is held. Therefore, in order to give jurisdiction, it must appear that the minor resided in the county where the court that made the order was held. Neither of these facts appear in the record as presented to this court, nor, indeed, are they alleged in the pleadings of the relator in this court. Whether this court will permit the proof of such fact outside the record is not presented to us and we do not pass upon that question."

In the separate opinion of Judge Gould in Ex parte Towles, supra, it is said: "The Legislature has seen fit to constitute the District Court a special tribunal for the trial of certain cases of contested elections. In trying such cases, the District Courts act under authority conferred by the statute, and not by virtue of any jurisdiction conferred by the Constitution."

In 7 R. C. L., supra, the rule is thus stated: "The fact that a court is one of general jurisdiction does not necessarily mean that it cannot be made a court of special and limited jurisdic-

tion in some cases, but on the contrary a court of general jurisdiction may have special powers conferred upon it by a special statute; and, as these powers are not exercised according to the course of the common law, they do not belong to it as a court of general jurisdiction. In the exercise of such special statutory powers, a court of general jurisdiction will be regarded and treated as a court of limited and special jurisdiction."

In holding that a district court of Missouri had no jurisdiction over cases arising under a certain act of that state, the Supreme Court of Missouri, in Carlisle v. Mo. Pac. Ry. Co., 168 Mo., 652, 68 S. W., 898, 900, said: "When an act creates a new liability or gives a right of action and at the same time prescribes the means by which, or the court in which, the right is to be enforced, resort cannot be had to any other means or court than that prescribed."

█ We think the above authorities fully and conclusively demonstrate that the statute requiring suits to "annul, correct, or modify" the conservation rules of the Railroad Commission to be brought in a district court of Travis County, Texas, is jurisdictional by nature, and does not violate or contravene any provision of our State Constitution. We think further that any other holding would lead to intolerable confusion. If all district courts of this State had jurisdiction of such matters, different courts of equal dignity might reach different and conflicting conclusions as to the same rule. Manifestly, the jurisdictional provision under discussion was incorporated in the act for the express purpose of avoiding such confusion.

We recommend that the judgment of the Court of Civil Appeals, which reversed the judgment of the district court and dissolved the temporary injunctions granted by it, be affirmed, and all writs issued by this court pertaining to this suit be set aside, vacated, and annulled.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals, and, because of the nature and importance of the question, the foregoing opinion in its entirety is adopted as the opinion of the Supreme Court.

C. M. CURETON, Chief Justice.

PER CURIAM.—On February 13, 1933, in the above numbered and entitled cause, this Court adopted the opinion of Section A of the Commission of Appeals and entered the judgment therein recommended. The judgment as entered by this court

affirmed the judgment of the Court of Civil Appeals, which reversed the judgment of the district court, and dissolved the temporary injunction granted by such district court. The judgment of this Court also set aside, vacated and annulled all orders and writs heretofore entered by this Court.

Since this adoption of the above opinion, it has been discovered that Rule 24, as set out in said opinion, was erroneously quoted. The rule should have been quoted as follows:

"RULE 24. Effective at 7 o'clock A. M., September 24, 1932, the amount of oil which each well in said field shall be permitted to produce daily shall be reckoned upon a combined acreage and per well basis as follows: Each and every well in said field shall be permitted to produce forty (40) barrels of oil per day and in addition thereto shall be allowed to produce the amount shown in the following table, column two (2) conforming to the acreage allotted to each well. No allowable production based on acreage will be granted on acreage units in excess of 20 acres per well. No well in the field shall be given a daily allowable in excess of two hundred and forty (240) barrels regardless of acreage it drains.

| Acreage | Acreage Allowable Per Acre Day | Well Allowable Per Day | Total Daily Allowables |
|---|---|---|---|
| 20 | 10 | 40 | 240 |
| 19 | 10 | 40 | 230 |
| 18 | 10 | 40 | 220 |
| 17 | 10 | 40 | 210 |
| 16 | 10 | 40 | 200 |
| 15 | 10 | 40 | 190 |
| 14 | 10 | 40 | 180 |
| 13 | 10 | 40 | 170 |
| 12 | 10 | 40 | 160 |
| 11 | 10 | 40 | 150 |
| 10 | 9 | 40 | 130 |
| 9 | 9 | 40 | 121 |
| 8 | 9 | 40 | 112 |
| 7 | 9 | 40 | 103 |
| 6 | 9 | 40 | 94 |
| 5 | 9 | 40 | 85 |
| 4 | 9 | 40 | 76 |
| 3 | 9 | 40 | 67 |
| 2 | 9 | 40 | 58 |
| 1 | 9 | 40 | 49" |

The mistake is immaterial, but the opinion is by special request of the Commission hereby corrected as above indicated.

In all other respects the opinion stands as originally written.

Since the rendition of the judgment recommended by the Commission in the above opinion the Attorney General has presented to this Court a motion wherein he states that the Alpha Petroleum Company has completed certain new wells in the field covered by the above Rule since this suit was filed in the district court, and is producing oil from the said wells and its other wells in said field far in excess of the proration rules and orders of the Commission.

The Attorney General then prays that this Court enter an order restraining the Alpha Petroleum Company from producing from any of its wells an amount of oil in excess of the allowable fixed by the orders and rules of the Railroad Commission, and in the alternative the Attorney General prays that this Court enter an order permitting him to institute suit for an injunction in the District Court of Travis County, Texas, to restrain the Alpha Petroleum Company from over-producing in violation of the proration orders of the Commission.

It seems from the record in this case that during the pendency of this suit in this Court, the Attorney General instituted some character of suit in the District Court of Travis County, Texas, to enjoin Alpha Petroleum Company from violating the proration orders of the Commission, and this court entered an order prohibiting the further prosecution of that suit, and prohibiting the enforcement of any order theretofore entered in such suit, until and pending, the final determination of the suit. The principal issue in the case was whether or not exclusive jurisdiction over the subject matter lies in a District Court of Travis County.

We are of the opinion that when the Court of Civil Appeals at Beaumont entered its final order and decree dissolving the temporary injunction granted in this cause by the District Court of Montgomery County, Texas, such order and decree of dissolution so entered by the Court of Civil Appeals became effective at once, and therefore no injunction has been in effect protecting the Alpha Petroleum Company from the proration orders of the Commission since the date of the dissolution thereof by the Court of Civil Appeals. Duncan v. Boyd, 288 S. W., 281 (Civ. App.). This question is ably discussed by Judge McClendon in the Duncan case, supra, and no good purpose can be served by further discussion here. Furthermore, under the opinion of the Commission, which has been adopted by us, the injunction issued by the District Court of Mont-

gomery County in this cause was void in its incipiency for want of jurisdiction in that court.

■ The order of this Court prohibiting the Attorney General from proceeding with his case in the District Court of Travis County was expressly annulled and vacated by this Court by its judgment of February 13, 1933, and is now no longer in force. The fact that the Alpha Petroleum Company still has a right to file a motion for rehearing in this cause does not have effect to keep alive the temporary restraining orders that have heretofore issued, but which the Court has since annulled and vacated.

It appears from what we have said that there exists no necessity for this Court to grant any of the relief sought by the Attorney General in the motion under consideration. The motion is therefore in all things overruled.

It is not intended by this opinion to intimate that we would grant the relief prayed for by the Attorney General if a necessity existed. It is not necessary for us to pass on that question.

### ON MOTION FOR REHEARING.

This case is before us on motion for rehearing filed by Alpha Petroleum Company, plaintiff in error. The plaintiff in error "repeats, re-adopts and re-assigns" all the alleged errors set forth in its application for the writ, and in addition thereto attempts to urge certain additional assignments of error not contained in the application and not heretofore urged. In respect to the matter of additional assignments we quote from the motion for rehearing as follows:

"Plaintiff in error repeats, re-adopts and re-assigns each of the errors set forth in the application for writ of error heretofore filed and granted in this cause. In addition thereto it assigns the following errors and urges the propositions hereafter set forth:

### "FIRST ADDITIONAL ASSIGNMENT OF ERROR

"*This Honorable Court erred in so construing House Bill 25, Acts 42nd Legislature, so as to deny plaintiff in error the right to maintain this suit in Montgomery County to protect its rights and property therein, because said act expressly provides that the Railroad Commission may maintain suits in Montgomery County to recover penalties and for injunctive relief against the violation of its order promulgated under said Act and to deny plaintiff in error the reciprocal right to maintain a suit in Montgomery County embracing the same subject*

*matter is thus to deny it the equal protection of the law and
due process of law guaranteed to it under the Constitution of
the United States.*
"* * * *

"SECOND ADDITIONAL ASSIGNMENT OF ERROR

"*The Supreme Court erred in holding that a litigant may
not produce injunctive relief against the Railroad Commission
without notice because of the provisions of House Bill 25, since
said act does not require that any notice be given the defendant
in any suit brought by the Attorney General. This construction
of the act renders it unconstitutional and denies to petitioner
the equal protection of the law and due process of law.*
"* * * *

"THIRD ADDITIONAL ASSIGNMENT OF ERROR

"*The Court erred in this: Even if the first order entered by
the District Court of Montgomery County on September 23
was in fact (contrary to what it states upon its face) a tem-
porary injunction rather than a temporary restraining order,
then nevertheless the subsequent order entered on October 1,
1933, reduced and converted said temporary injunction into a
temporary restraining order.*"

An examinaton of this record discloses that the above addi-
tional assignments of error were not presented to the Court
of Civil Appeals in any form, and were not contained in the
application for the writ of error, but are urged for the first
time in this Court in the motion for rehearing. Under such a
record they come too late for consideration here. 3 Texas
Juris., p. 1000, par. 714.

We have read and carefully considered said motion as touch-
ing the questions decided by us which were presented in the
application for the writ and still adhere to the views expressed
in our original opinion.

We recommend that the motion for rehearing be in all
things overruled.